# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
333 Constitution Avenue, N.W., Washington, DC 20001

| | | |
|---|---|---|
| **DON HAMRICK** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1616 (RMC)** |
| | ) | |
| **UNITED NATIONS**, *et al.* ) | | |
| **Defendants.** | ) | |
| _____ | ) | |

**RECEIVED**

APR 2 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# PLAINTIFF'S ANSWER TO ORDER
## DIRECTING PLAINTIFF TO COMPLETE SERVICE OF PROCESS

### PLAINTIFF'S MOTION FOR THE COURT
### TO PRODUCE COPY OF COMPLAINT AND HAVE
### THE U.S. MARSHALS SERVICE PROVIDE SERVICE OF
### THE COMPLAINT AND SUMMONS IN ACCORDANCE WITH RULE 4(c)(3)
### OF THE FEDERAL RULES OF CIVIL PROCEDURE
### BECAUSE THE PLAINTIFF IS "DEAD-BROKE" AND UNEMPLOYED

### PLAINTIFF'S MOTION FOR "CIVIL GIDEON" ATTORNEY

*Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," . . . ." "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.* CONLEY v. GIBSON, 355 U.S. 41 (1957).

I have spent 6 years in the federal courts as an unrepresented civil plaintiff defending my Second Amendment rights as U.S. citizen and as a U.S. merchant seaman against a wrongful final agency action denial by the U.S. Coast Guard relying on my wages as a seaman. At every pleading, every motion, every appeal up to and including the U.S. Supreme Court my pleadings, motions, and appeals have been denied and dismissed while the federal courts granted every motion filed by the U.S. Government to the extent that appearance of judicial bias against either the unrepresented civil plaintiff or the Second Amendment case or both, *became clearly evident.*

I do not now know why service of the complaint and summons were not performed. The most likely explanation is that I was so broke and financially ruined by the 6 years of federal litigation that I believe I included a formal request for the Court Clerk to make the extra copies for the Defendants because I could not afford to make the necessary copies.

On August 7, 2006 the American Bar Association's *Task Force on Civil Justice* unanimously recommend the following:

*RESOLVED, That the American Bar Association urges federal, state, and territorial governments to provide legal counsel as a matter of right at public expense to low income*

persons in those categories of adversarial proceedings where **basic human needs** are at stake, such as those involving shelter, sustenance, **safety**, health or child custody as determined by each jurisdiction.

Basic human needs equates to *fundamental human rights* as expressed in international human rights treaties such as:

## United Nations *DECLARATION ON HUMAN RIGHTS DEFENDERS*
Article 6. Obstruction of Justice.
Article 9 The Right to Effective Remedy of Human Rights Violations
Article 13. Obstruction of Justice.

## *THE INTER-AMERICAN CONVENTION AGAINST CORRUPTION*
Article III.1. Abuse of Authority, (Equivalent to 18 U.S.C. § 4. Misprision of Felony).
Article III.11. Obstruction of Justice.
Article IV. Acts of Corruption (18 U.S.C. § 872 Extortion Under Color of Law)

## United Nations *CONVENTION AGAINST CORRUPTION*
Article 11. Measures Relating to the Judiciary and Prosecution Services;
Article 19. Abuse of Functions;
Article 24. Concealment;
Article 25. Obstruction of Justice;
Article 27. Participation and Attempt;
Article 28. Knowledge, Intent and Purpose as Elements of an Offence;
Article 30. Prosecution, Adjudication and Sanctions;
Article 32. Protection of . . . Victims;
Article 33. Protection of Reporting Persons;
Article 34. Consequences of Acts of Corruption ["Citizen's Arrest Warrant"]
Article 39. Cooperation Between National Authorities and the Private Sector.

## *INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS*
Article 14.1. Denial of Equal Justice Under the Law
Article 15.1. Threatened False Arrest (As applied against U.S. Marshals Service)
Article 16. Denial of Equal Justice Under the Law

## *UNIVERSAL DECLARATION OF HUMAN RIGHTS*
Article 6. Denial of Equal Justice Under the Law (Treated without rights).
Article 7. Denial of Equal Justice Under the Law (Unrepresented Civil Plaintiff)
Article 8. Denial of Effective Remedy. Obstruction of Justice.
Article 9. Threatened False Arrest (As applied against U.S. Marshals Service)
Article 10. Wrongfully Denied a Jury Trial (Violation of my Seventh Amendment)

## *AMERICAN DECLARATION OF THE RIGHTS AND DUTIES OF MAN*
Article II. Denial of Equal Justice Under the Law
Article XVIII. Denial of a Fair Civil Trial (Seventh Amendment)
Article XXIV. Denial of Right to Petition for Redress (First Amndment)
Article XXVI. Denial of Due Process Rights (Fifth & Fourteenth Amendments)

*I hereby MOTION the Court for a court-appointed attorney in accordance with the the "safety" clause of the American Bar Association's "Civil Gideon" recommendation and in compliance with the above international human rights treaties!*

**The Court should note that in 2006 I filed a human rights complaint against the United States and the United Nations with the Inter-American Commission on Human Rights, Petition No. P-1142-06, which is still being investigated. Denying my Motion for "Civil Gideon" representation will be added to my human rights complaint as another human rights violation by the federal courts. If I cannot find justice in the American corrupt judicial system perhaps I will find it with an international human rights tribunal.**

My 6 years of federal litigation is plagued with corruption and obstructions of justice by both the federal bench and bar, with extortions under color of law, 18 U.S.C. § 872, of filing fees coercively paid by me in violation of the Seamen's Suit law, 28 U.S.C. § 1916. My every attempt to get the total amount of extorted filing, ($1,465) fees returned were denied by the federal courts. I have exhausted every available remedy from the judicial, the executive, and the legislative (Private Bill). I have served the remedy of last resort, the Citizen's Arrest Warrant which includes probable cause evidence of Extortion Under Color of Law in my Petition for Writ of Certiorari, to the U.S. Supreme Court, (see Motion No. 07M24), and to the U.S. Marshals Service, the FBI, and now presently to Jeffrey Taylor, U.S. Attorney for the District of Columbia under penalty of perjury requesting assistance with the Citizen's Arrest Warrant with the alternative of making the Citizen's Arrest of named federal judges of the DC Circuit and the Chief Justice of the U.S. Supreme Court.

The following last of cases proves that the federal courts do not treat unrepresented civil plaintiffs or federal laws equally at the expense of equal justice under the law and the Rule of Law:

> U.S. District Court/DC, No. 02-1434 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/DC, No. 02-1435 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/DC, No. 03-2160 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/DC, No. 04-0422 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/DC, No. 04-2040 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/DC, No. 05-1993 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/Charlotte, NC), No. 04-0065 (OBEYED 28 U.S.C. § 1916)
> U.S. District Court/Charlotte, NC), No. 04-0344 (OBEYED 28 U.S.C. § 1916)
> è DC Circuit, No. 02-5334 (VIOLATED THE LAW)
> è DC Circuit, No. 04-5316 (VIOLATED THE LAW)
> è DC Circuit, No. 05-5414 (VIOLATED THE LAW)
> è DC Circuit, No. 05-5429 (VIOLATED THE LAW)
> è 8th CIRCUIT, CASE NO. 07-2400 (VIOLATED THE LAW)
> è U.S. District Court/Little Rock, No. 06-0044. (VIOLATED THE LAW)
> è U.S. Supreme Court, Nos. 03-145 (VIOLATED THE LAW)
> è U.S. Supreme Court, Nos. 04-1150 (VIOLATED THE LAW)
> è U.S. Supreme Court, Nos. 04M56 (VIOLATED THE LAW)

My life is ruined because of the corrupt federal courts and the corrupt U.S. Department of Justice. The federal courts, in my list of cases above, have prejudicially served to protect the U.S. Government at the expense of my constitutional rights and at the expense of equal justice under the law.

***My next step is to proceed as a criminal defendant in the pursuit of justice. I will at least have more rights as a criminal defendant that having no***

*enforceable rights as an unrepresented civil plaintiff?* The U.S. Marshals Service has, in the past, threatened to arrest me for kidnapping (18 U.S.C. § 1201) and hostage taking (18 U.S.C. § 1203) if I attempt to make citizen's arrests of federal judges upon the probable cause evidence I have proving felony extortion under color of law even though I would be acting in a lawful manner under other laws as a crime victim and as a Private Attorney General under the Civil RICO Act. The U.S. Marshals Service, in my opinion, can be charged with obstruction of justice, if the laws were applied equally under the Rule of Law.

### Case Law

*Mireles* v. *Waco*, 502 U.S. 9, at 11 (1991):

**. . . a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.** *Forrester* v. *White*, 484 U.S., at 227 -229; *Stump* v. *Sparkman*, 435 U.S., at 360 .

*Chandler* v. *Judicial Council*, 398 U.S. 74, at 140 (1970), **Chief Justice Berger:**
*"If* [judges] *break a law, they can be prosecuted."*

*United States* v. *Lee*, 106 U.S. 196, at 220 (1882):

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it. It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives."

*Cohens* v. *Virginia*, 19 U.S. 264, at 404  (6 Wheaton 264) (1821)

"It is most true that this Court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment and conscientiously to perform our duty. In doing this on the present occasion, we find this tribunal invested with appellate jurisdiction in all cases arising under the Constitution and laws of the United States. We find no exception to this grant, and we cannot insert one."

*Duncan* v. *Missouri*, 152 U.S. 377, 382 (1894):

"[T]he privileges and immunities of citizens of the United States protected by the fourteenth amendment are privileges and immunities arising out of the nature and essential character of the federal government, and granted or secured by the constitution; and due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government; . . ."

*Wilson* v. *State*, 33 **Arkansas**, 557, 560 (1878) (*striking a ban on unconcealed carry*).

> "If cowardly and dishonorable men sometimes shoot unarmed men with army pistols or guns, the evil must be pre vented by the penitentiary and gallows, and not by a general deprivation of a constitutional privilege."

*Hartford Fire Ins. Co.* v. *California*, 509 U.S. 764 (1993)

> "[A] complaint should not be dismissed unless `it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain* v. *Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 45 -46 (1957)).

*Conley* v. *Gibson*, 355 U.S. 41 at 48 (1957)

> "Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. *Maty* v. *Grasselli Chemical Co.*, 303 U.S. 197. (1938) (*Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end.*)

*United States* v. *Chadwick*, 433 U.S. 1, at 16 (1976)

> " . . . it is deeply distressing that the Department of Justice, whose mission is to protect the constitutional liberties of the people of the United States, should even appear to be seeking to subvert them by extreme and dubious legal arguments. It is gratifying that the Court today unanimously rejects the Government's position."

*Chandler* v. *Judicial Council*, 398 U.S. 74, at 140 (1970), Chief Justice Berger:

> "If [judges] break a law, they can be prosecuted."

*Chandler* v. *Judicial Council*, 398 U.S. 74, at 140 (1970), Justice Black and Douglas in their dissenting opinion, 398 U.S. 74, at 141-142, agreed with Chief Justice Berger on the point above:

> "While judges, like other people, can be tried, convicted, and punished for crimes . . ."

*Forrester* v. *White*, 484 U.S. 219 (1988):

> This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform. Thus, for example, the informal and ex parte nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character. See Stump v. Sparkman, 435 U.S. 349, 363 , n. 12 (1978). Similarly, acting to disbar an

attorney as a sanction for contempt of court, by invoking a power "possessed by all courts which have authority to admit attorneys to practice," does not become less judicial by virtue of an allegation of malice or corruption of motive. Bradley v. Fisher, 13 Wall., at 354. [484 U.S. 219, 228] As the Bradley Court noted: "Against the consequences of [judges'] erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort." Ibid.

Administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts. In Ex parte Virginia, 100 U.S. 339 (1880), for example, this Court declined to extend immunity to a county judge who had been charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors for the county's courts. The Court reasoned:

> "Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge. . . . That the jurors are selected for a court makes no difference. So are court-criers, tipstaves, sheriffs, &c. Is their election or their appointment a judicial act?" Id., at 348.

Although this case involved a criminal charge against a judge, the reach of the Court's analysis was not in any obvious way confined by that circumstance.

Likewise, judicial immunity has not been extended to judges acting to promulgate a code of conduct for attorneys. Supreme Court of Virginia v. Consumers Union of United States, Inc., 446 U.S. 719 (1980). In explaining why legislative, rather than judicial, immunity furnished the appropriate standard, we said: "Although it is clear that under Virginia law the issuance of the Bar Code was a proper function of the Virginia Court, propounding the Code was not an act of adjudication but one of rulemaking." Id., at 731. Similarly, in the same case, we held that judges acting to enforce the Bar Code would be treated like prosecutors, and thus would [484 U.S. 219, 229] be amenable to suit for injunctive and declaratory relief. Id., at 734-737. Cf. Pulliam v. Allen, 466 U.S. 522 (1984). Once again, it was the nature of the function performed, not the identity of the actor who performed it, that informed our immunity analysis.

Respectfully

Don Hamrick

INTER - AMERICAN COMMISSION ON HUMAN RIGHTS
COMISION INTERAMERICANA DE DERECHOS HUMANOS
COMISSÃO INTERAMERICANA DE DIREITOS HUMANOS
COMMISSION INTERAMÉRICAINE DES DROITS DE L'HOMME



# ORGANIZATION OF AMERICAN STATES
WASHINGTON, D.C. 2 0 0 0 6

April 8, 2008

Ref.:  **Don Hamrick**
       **P-1142-06**
       **United States**

Dear Mr. Hamrick:

I am pleased to address you on behalf of the Inter-American Commission on Human Rights in order to acknowledge receipt of your communication of March 29, 2008, received by this Executive Secretariat on April 4, 2008, in which you request information about the status of your complaint.

In this regard, I hereby inform you that the petition remains under study in order to determine how it may be processed. As soon as that preliminary evaluation is concluded, we will be in contact with you.

Sincerely yours,

Santiago A. Canton
Executive Secretary

Don Hamrick
5860 Wilburn Road
Wilburn, Arkansas 72179

E-mail: 4donhamrick@gmail.com

4/8/2008-AA-3278070

## DON HAMRICK

Monday, April 21, 2008

5860 Wilburn Road, Wilburn, Arkansas 72179, Email: 4donhamrick@gmail.com

# Questionnaire on Citizen Security and Human Rights Dated December 18, 2007

http://www.cidh.org/Seguridad_Ciudadana_Consulta.eng.htm

## Paolo G. Carozza

Inter-American Commission on Human Rights
1889 F Street, N.W.
Washington, D.C., 20006

Dear Mr. Carozza,

Please reply to my email address *4donhamrick@gmail.com*.

I need to know why the Questionaire on Citizen Security and Human Rights dated December 18, 2007 was issued.

Was your questionnaire the result of my Petition No. P-1142-06?

Was your questionnaire the result of Jessica Gonzales' Petition No. P-1490-05?

Was your questionnaire the result of the Second Amendment case now at the U.S. Supreme Court, *District of Columbia* v. *Heller*, No. 290-07?

It none of the above, then what prompted the Questionaire and what was the response from the United States?

Respectfully,

Don Hamrick

**DON HAMRICK**

Monday, April 21, 2008

5860 Wilburn Road, Wilburn, Arkansas 72179, Email:    **4donhamrick@gmail.com**

# The United State Supreme Court Wrongfully Nullified Our "First Amendment Right to Petition the Government for Redress of Grievance" From Our "Bill of Rights"

## Paolo G. Carozza
Inter-American Commission on Human Rights
1889 F Street, N.W.
Washington, D.C., 20006

Dear Mr. Carozza,

Please add the attached information to my Petition No. P-1142-06 and to Jessica Gonzales (Lenahan) Petition No. 1490-05 as confirming evidence of the United States oppressive and tyrannical judicial system and that the American courts are prejudiced against unrepresented civil plaintiffs with constitutional tort cases.

Please treat the attached information is more evidence of human rights violations under the following human rights treaties:

**United Nations** *DECLARATION ON HUMAN RIGHTS DEFENDERS*
Article 6. Obstruction of Justice.
Article 9 The Right to Effective Remedy of Human Rights Violations
Article 13. Obstruction of Justice.

*THE INTER-AMERICAN CONVENTION AGAINST CORRUPTION*
Article III.1. Abuse of Authority, (Equivalent to 18 U.S.C. § 4. Misprision of Felony).
Article III.11. Obstruction of Justice.
Article IV. Acts of Corruption (18 U.S.C. § 872 Extortion Under Color of Law)

**United Nations** *CONVENTION AGAINST CORRUPTION*
Article 11. Measures Relating to the Judiciary and Prosecution Services;
Article 19. Abuse of Functions;
Article 24. Concealment;
Article 25. Obstruction of Justice;
Article 27. Participation and Attempt;
Article 28. Knowledge, Intent and Purpose as Elements of an Offence;
Article 30. Prosecution, Adjudication and Sanctions;
Article 32. Protection of . . . Victims;
Article 33. Protection of Reporting Persons;
Article 34. Consequences of Acts of Corruption ["Citizen's Arrest Warrant"]
Article 39. Cooperation Between National Authorities and the Private Sector.

1

## *INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS*
Article 14.1. Denial of Equal Justice Under the Law
Article 15.1. Threatened False Arrest (As applied against U.S. Marshals Service)
Article 16. Denial of Equal Justice Under the Law

## *UNIVERSAL DECLARATION OF HUMAN RIGHTS*
Article 6. Denial of Equal Justice Under the Law (Treated without rights).
Article 7. Denial of Equal Justice Under the Law (Unrepresented Civil Plaintiff)
Article 8. Denial of Effective Remedy. Obstruction of Justice.
Article 9. Threatened False Arrest (As applied against U.S. Marshals Service)
Article 10. Wrongfully Denied a Jury Trial (Violation of my Seventh Amendment)

## *AMERICAN DECLARATION OF THE RIGHTS AND DUTIES OF MAN*
Article II. Denial of Equal Justice Under the Law
Article XVIII. Denial of a Fair Civil Trial (Seventh Amendment)
Article XXIV. Denial of Right to Petition for Redress (First Amndment)
Article XXVI. Denial of Due Process Rights (Fifth & Fourteenth Amendments)

Thank you.

Respectfully,

Don Hamrick

2

# We the People Foundation, et al
## v.
# United States, et al,
### U.S. District Court for the District of Columbia, No. 04-1211 (August 31, 2005)

The Supreme Court, however, has held that "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." *See Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979). Plaintiffs' claims that the defendants are obligated to "properly" respond to plaintiffs' petitions shall thus be dismissed for failure to state a claim upon which relief may be granted.

# We the People Foundation, et al
## v.
# United States, et al,
### THE APPEAL: DC Circuit, No. 05-5359 (May 8, 2007)

#### IV

Plaintiffs cite the work of several commentators who suggest that *Smith* and *Knight* overlooked important historical information regarding the right to petition. Those commentators point to the government practice of considering petitions in some quasi-formal fashion from the 13th century in England through American colonial times – a practice that continued in the early years of the American Republic. Based on this historical practice, plaintiffs and these commentators contend that the Petition Clause should be interpreted to incorporate a right to a response to or official consideration of petitions. *See, e.g.,* Stephen A. Higginson, *A Short History of the Right to Petition Government for the Redress of Grievances*, 96 YALE L.J. 142, 155 (1986); James E. Pfander, *Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government*, 91 NW. U. L. REV. 899, 904-05 & n.22 (1997); Julie M. Spanbauer, *The First Amendment Right to Petition Government for a Redress of Grievances: Cut From a Different Cloth*, 21 HASTINGS CONST. L.Q. 15, 17-18 (1993); Note, *A Petition Clause Analysis of Suits Against the Government: Implications for Rule 11 Sanctions*, 106 HARV. L. REV. 1111, 1116-18 (1993); *cf.* David C. Frederick, *John Quincy Adams, Slavery, and the Disappearance of the Right of Petition*, 9 LAW & HIST REV. 113, 116-18, 141 (1991).

Other scholars disagree, arguing based on the plain text of the First Amendment that the "right to petition the government for a redress of grievances really is just a right to petition the government for a redress of grievances." Gary Lawson & Guy Seidman, *Downsizing the Right to Petition*, 93 NW. U. L. REV. 739, 766 (1999); *cf.* Norman B. Smith, *"Shall Make No Law Abridging . . .": An Analysis of the Neglected, but Nearly Absolute, Right of Petition*, 54 U. CIN. L. REV. 1153, 1190-91 (1986). These scholars note that the Petition Clause by its terms refers only to a right "to petition"; it does not also refer to a right to response or official consideration. *See* N. BAILEY, AN UNIVERSAL ETYMOLOGICAL ENGLISH DICTIONARY (24th ed. 1782) ("To petition": "to present or put up a Petition"); S. JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (6th ed. 1785) ("To petition":

"To solicite; to supplicate"). As they suggest, moreover, the Framers and Ratifiers did not intend to incorporate every historical practice of British or colonial governments into the text of the Constitution. *See* Lawson & Seidman, 93 NW. U. L. REV. at 756-57; *cf. Williams v. Florida*, 399 U.S. 78, 92-93 (1970); *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 274-76 (1989) ("Despite this recognition of civil exemplary damages as punitive in nature, the Eighth Amendment did not expressly include it within its scope.").

We need not resolve this debate, however, because we must follow the binding Supreme Court precedent. *See Tenet v. Doe*, 544 U.S. 1, 10-11 (2005). And under that precedent, Executive and Legislative responses to and consideration of petitions are entrusted to the discretion of those Branches.

The judgment of the District Court is affirmed.

## We the People Foundation, et al
## v.
## United States, et al,
## U.S. Supreme Court, No. 07-681
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/SCOTUS-DENIES-Docket-07-681.htm


## Petition for Writ of Certiorari – DENIED January 7, 2008

## Petition for Rehearing FILED January 31, 2008

## Petition for Rehearing DENIED February 25, 2008
http://www.supremecourtus.gov/docket/07-681.htm

# U.S. Supreme Court Denies Certiorari for Landmark Right to Petition Case

## Constitutional Crisis Escalating

We the People Foundation, January 13, 2008
http://www.wethepeoplefoundation.org/UPDATE/Update2008-01-13.htm

**Coming: Appropriate Next Steps**

On January 4, 2008, the Judges of the Supreme Court of the United States, in conference, voted to deny the Petition for Writ of Certiorari in the landmark Right-to-Petition case *We The People v. United States*. On January 7 the Court issued its <u>Order</u> denying certiorari.

Without comment, the Supreme Court decided not to hear *We The People v. United States*, a case which, if heard, would have required the Court to declare -- for the first time history -- whether the Government is obligated to respond to proper Petitions by ordinary, private individuals for Redress of Grievances – specifically Grievances alleging unconstitutional behavior by the Government, and whether the individual having so Petitioned, has the Right to act to peacefully hold the Government accountable if the Government refuses to respond.

In denying to hear this first impression case, the Court has ignored its duty to interpret the meaning of the Constitution, and leaves undisturbed the decision of the DC Court of Appeals which, unfortunately, relied on two cases that were not on point -- they involved employment related grievances by state public employees and state legislation governing same, not Grievances by private parties, and not involving alleged violations of the Constitution.

The decision by the Supreme Court has grave consequences for the future of individual Rights, Freedom and Liberty, popular sovereignty, government accountability and the great experiment in (self) government that is America. **<u>Any Right that is not enforceable is not a Right.</u>**

Our attention is now focused on defining the appropriate next steps for a Free People to take under the current circumstances.

However, there is one remaining judicial option open to us that we are now exercising (let it never be said that we did not exhaust every opportunity for judicial relief).

Under the Rules of the Supreme Court, we have 25 days to return to the Supreme Court with a petition for rehearing of the Court's January 7, 2008 Order denying certiorari.

On January 11, 2008, Bob Schulz and the We The People organization filed an Emergency Motion in the Second Circuit Court of Appeals in *United States v We The People* (the "6700" case against WTP for distributing the Blue Folder with its information regarding the withholding of pay from paychecks).

The emergency motion requests a Certificate of Agreement from the Second Circuit, which would have the Second Circuit declare that it agrees that the Supreme Court should reconsider its decision and grant certiorari in *We The People v United States* (Right to Petition case), because the fundamental questions presented by the People in *We The*

*People v United States* are similar to those raised in *United States v We The People* (6700 case), and because the denial of Certiorari by the Supreme Court leaves the Second Circuit without <u>any</u> relevant case law to guide it in deciding its case.

A decision by the Second Circuit on the emergency motion will be issued sometime between Monday, January 14 and Friday, January 18. <u>Click Here</u> to read the Emergency Motion.

Unless the Court agrees to grant our emergency motion for a Certificate of Agreement and temporarily suspend the proceedings, oral argument in *United States v We The People* will be heard by the three-judge panel at the Second Circuit Court of Appeals in Manhattan on February 4, 2008.

## Appropriate Next Steps

Make no mistake.

By its apparent abdication of its duty under the Constitution and refusal to hear our landmark Right to Petition lawsuit, the U.S. Supreme Court has ushered into existence a dangerous state of affairs that can not, and must not, be tolerated by Free People.

By its denial of Certiorari in this most important case, the Court has sent a silent, but unambiguous decree to the People that cannot be left unchallenged: that the People have lost their Fundamental Right to peacefully hold the Government of their creation accountable to the Constitution and the rule of law.

Please begin to spread word of this Constitutional travesty across the land.

Our Constitution is, indeed, hanging by a thread. We pray the Supreme Court will reconsider this grievous decision that denies to the People a declaration of the full contours of the meaning of the last ten words of the First Amendment.

During the coming days, this Foundation will announce what it believes are the appropriate next steps for the People to restore Constitutional Order and secure Freedom for ourselves, and                                         our                                                      posterity.

*Acta Non Verba*

<u>Read the Emergency Motion to the Second Circuit Court of Appeals</u>
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/2ndCirc-Brief-4SCOTUSAgree-Jan-08.pdf

<u>Docket entry of Supreme Court denying Certiorari for RTP lawsuit, case 07-681</u>
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/SCOTUS-DENIES-Docket-07-681.htm

*Right-click* to <u>access the full Supreme Court Order</u> *(see page 22)*
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/SCOTUS-Order-DenyCert-Jan-07-08.pdf

*RIGHT-Click* here to download WTP's <u>Petition for Writ of Certiorari</u>
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/USSC-Writ-Cert-DC-Oct-2007.pdf

to the U.S. Supreme Court and its <u>Appendix.</u>
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/USSC-Writ-Cert-DC-Oct-2007-Appendix.pdf

# The Constitutional Conspiracy:
# Courts Colluding With White House to Avoid Accountability

We the People Foundation, April 12, 2008
http://www.wethepeoplefoundation.org/Update/Update2008-04-12.htm

The proof is in. The federal courts have been found to be co-conspirators with the Executive Branch in a collusive scheme to avoid being held accountable to the Constitution by the People.

There can be no doubt. The federal judiciary is now being utilized as an weapon of oppression rather than for the ends of Justice for which it was designed.

Not only has the Judiciary abandoned its role as an independent arbiter of legal controversies involving injured citizens seeking remediation for Government wrongs, the Judiciary now refuses to even discuss the most basic, underlying Founding Principles upon which our Republic rests, i.e., the Rights of the People to Sovereignty and to hold Government accountable -- particularly its obligation to respond to Petitions for Redress of constitutional torts as provided by the First Amendment.

The most egregious result of these developments is that not only are the People effectively unable to secure Redress against Government entities that have harmed them, but the Judiciary has now abdicated its fundamental function under the Constitution by refusing to interpret the Constitution where questions of the Sovereignty of the People are implicated.

This is no small matter for the People. Without substantive recourse through the courts and no means by which to secure a declaration of these fundamental Principles from the Judiciary, the People are, indeed, left with very few means by which to peacefully secure their Rights against the majority or the tyrants.

Of course, the Government would much prefer that we quietly tolerate such despotic behavior, but it is now very clear that the People must begin to seriously assess their remaining options to restore Constitutional Order.

With the illusion of Justice now stripped away by the Judiciary herself, our nation rapidly approaches a crossroad: We will tolerate the continuing insolence of our servant government and quietly lose our remaining Freedoms, or we organize and do something to stop it.

The Congress has failed. The Executive has failed. And now, the Judiciary joined her sister branches in a conspiracy to prop up a cancerous and dangerous government.

The proof of the constitutional conspiracy can be found in two lawsuits that arose out of the Accountability Clause of the Constitution: 1) The landmark Right-to-Petition lawsuit, *We The People v. United States*; and 2) the current "6700" civil lawsuit, *United States v. We The People*.

At the heart of the constitutional question is the long-forgotten unalienable Right of the People, as articulated by the last ten words of the First Amendment, to hold their servant government directly accountable. According to the clear, and (still) un-refuted historical evidence, this important Right also embodies the Right of the People to

7

peacefully secure Accountability by withholding their financial support should the Government fails to provide Redress.

The behavior of the courts as evidenced by the record can leave but one interpretation: The three branches of Government have colluded in a constitutional conspiracy to impede the exercise of the Right of the People to secure Constitutional Order.

This conspiracy against the Constitution cannot be tolerated any longer.

Admittedly, this article is longer than we prefer to post. There have been a number of significant recent developments as these cases have moved through the courts that we have not reported about until now. Some of these shocking developments are provided within context below along with the potent legal pleadings we have responded to them with. We trust you will find the escalating conspiracy against the Constitution to be most troubling and worthy of your investigation. Thank you for your continuing interest and support of our noble cause.

### We The People v. United States

The first case, the landmark Right-to-Petition lawsuit, *We The People v. United States*, arose from the Accountability Clause as a result of the Peoples' Petitions for Redress of **injuries** due to the Government's adoption of the Iraq Resolution in violation of the war powers clause of the Constitution, the Government's adoption of the Federal Reserve Act in violation of the money clauses, the Government's adoption of the USA Patriot Act in violation of the privacy clauses, and the Government's operation and enforcement of a direct, un-apportioned tax on the People's labor in violation of the tax clauses.

The People repeatedly Petitioned for Redress of these injuries in the most humble terms. The only remedy the People sought was for official, specific answers to the questions included in the Petitions, questions that challenged the constitutionality of the acts of the Government.

**The People's injuries increased**; the Government refused to respond, ignoring the People's Right of Redress.

The People decided to claim and exercise their Right to retain their money until their Grievances were Redressed, a Right guaranteed by the Accountability Clause of the First Amendment.

**The People's insulting injuries multiplied.** The United States answered by retaliating against the People with liens, levies and seizures of property.

The People took the United States to court, claiming the retention of their money under the circumstances was protected by the Accountability Clause of the First Amendment.

During the entire history of the United States of America, no court had interpreted the meaning of the Accountability Clause – that is, no court had ever declared the Rights of the People and the obligations of the Government under the last ten words of the First Amendment, words that guarantee the fifth of the five Freedoms guaranteed by the First Amendment. The People's case rested on a thoroughly researched review of the historical context and purpose of the Accountability Clause – i.e., the original intent of the Founding Fathers. Critically, there was nothing in American history or jurisprudence that contradicted the People's interpretation of the meaning of the Accountability Clause.

**The People's unjust injuries grew.** The Attorney General's defensive argument was, "The Constitution says the People have the Right to Petition for Redress, but the Constitution does not say the Government has to listen or respond." NOTE: The twenty-sixth Amendment guarantees everyone over the age of 18 the right to vote, but it does not say the Government has to count the votes. As Chief Justice Marshall wrote in 1813, "there is no provision in the Constitution that was intended to be without effect."

**The People's noxious injuries multiplied.** Without responding at all to the People's "Framers' Intent" argument, and without offering its interpretation of the meaning of the Accountability clause, the federal courts dismissed *We The People v. United States,* saying that the Supreme Court of the United States has ruled in two earlier cases that the Government does not have to listen or respond to Petitions for Redress. The two cases cited by the courts were *Smith v. Arkansas* and *Minnesota v. Knight.* Both cases involved on-the-job, employment-related grievances from public employees who felt they did not have to comply with laws passed by their State legislatures dealing with grievance procedures for public employees. In Arkansas state highway workers wanted to submit their grievances to their state employer through a union, even though the state law prohibited unions. In Minnesota, state college professors wanted to submit their grievances directly to their employers, even though the state law required them to submit their grievances through their union. In those two cases, the Supreme Court ruled the public employees had to comply with their State laws.

Both the *Smith* and *Knight* cases were not on point. The facts and the legal arguments in those cases had nothing to do with the facts and the law in *We The People v United States,* where the Plaintiffs are citizens who, in their private capacities, are challenging the Government's violations of the Constitution of the United States of America.

The People Petitioned the Supreme Court of the United States to hear the case.

**The People's injuries intensified dramatically.** Without further comment, the Supreme Court simply declared it did not want to hear the case (notwithstanding the fact that its primary job is to interpret the meaning of the Constitution and to hold the other two branches in their constitutional places). NOTE: SCOTUS did not refuse to hear the case because it believes the case is frivolous or without merit. Rather, it is safe to assume SCOTUS is highly politicized, and decided not to hear the case because the Court knew that if it was put into the position of having to interpret the Accountability Clause the ultimate power in our society would come to rest with the People (where the Founding Fathers intended it to be).

**It gets much worse.**

### United States v. We The People

The second case, *United States v. We The People* arose from the Accountability Clause as a result of a Petition to the Government for Redress of **injuries** relating to the Government's practice of forcing companies to withhold pay from the paychecks of its employees and to turn that money over to the IRS.

On March 15, 2003, in order to reconcile significant, well documented discrepancies between the statutory requirements of Internal Revenue Code and the Government's institutionalized practice of forced withholding, WTP Petitioned the federal Executive and Legislative branches for Redress of alleged Grievances. This Petition relied on and directly quoted relevant statutes, regulations and court decisions. The objective of the

Petition was to secure a *legal* review of the material by the Government, or (if Government chose not to respond to the Petition) by corporate attorneys and accountants that might receive the Petition materials and then, if possible, to effect a *legal* termination of withholding if expressly provided by law.

The Petition included forms for workers to submit to their company officials with instructions that the materials be submitted to a "rigorous review" by the company and its "tax professionals."

To repeat, the Petitions were *earmarked* for review by tax professionals, with the stated goal being the voluntary termination of wage withholding for ordinary workers as and *if provided for under U.S. tax law.*

In addition, the Petition included a NOTICE to the Government requesting to be notified if there was anything in the Petition that was false or misleading, and informing the Government of the WTP's intention to distribute the contents of the Petition to workers across the country, free of charge. All the material was contained in a blue folder, labeled "Legal Termination of Tax Withholding."

**The People's constitutional injuries were compounded**. The Government ignored the People and their Petition for Redress.

Receiving *no response* from the Government, WTP posted the entire contents of the blue folder on the Internet -- the entire Petition for Redress regarding withholding, allowing anyone to download and print the material *for free*. In addition, during April and May of 2003, WTP distributed, free of charge, 3,500 copies of the Petition at 37 public meetings around the country. In advance, WTP formally NOTICED the appropriate local federal DOJ and IRS officials of the date, time and location of each of the 37 meetings, requesting each time that someone from the Government attend the meeting and to advise WTP if anything it was doing or saying was false or misleading. *At no time did the Government ever respond to any of the 37 NOTICES.*

On March 31, 2007, complete with WTP's 45' x 25' banner that reads "No Answers, NO Taxes," one hundred and thirty People dressed in "V" for Vendetta masks and costumes stood in formation during a one hour silent vigil on Pennsylvania Avenue at an entrance to the front of the White House. This was the third in a series of "V" events by WTP. On November 5, 2006, a single "V" appeared at the security check points at the White House, the Attorney General's office, and the Capitol to serve another copy of the outstanding Petitions for Redress. The entire episode was videotaped and appeared on <u>YouTube and Google</u>.[1] On November 14, 2006, sixty "V"s stood in formation in a silent vigil at the White House with the "No Answers, NO Taxes" banner.

WTP sponsored the three "V" events to protest the Government's refusal to respond to the withholding Petition for Redress and the other seven outstanding Petitions for Redress: 1) Iraq Resolution; 2) Federal Reserve; 3) USA Patriot Act; 4) Direct, Un-apportioned Tax on Labor; 5) Immigration; 6) North American Union; and 7) Gun Control.

On March 31, 2007, under the heading, "AGGITATING FOR THE FIRST AMENDMENT," the Washington Post published a photo of the "V" for Vendetta vigil

---

[1] http://www.youtube.com/watch?v=1k95If_lGkM&feature=user

and a short article about the constitutional issue involved. **Click here**[2] to see the Washington Post photo and article. Click here for the video.[3]

**The People's constitutionally noxious and deleterious injuries mounted.** Several days after the Washington Post article appeared, the United States sued WTP in a civil action. The suit charged that by distributing the Petition for Redress on withholding WTP was "promoting an abusive tax shelter." The Government asked the Court for an order permanently enjoining WTP from distributing copies of the Petition, requiring WTP to turn over to the Government the identities and contact information of all People who received a copy of the Blue Folder and requiring WTP to post a copy of the Court's order on the front page of WTP's website.

Arguing the distribution of copies of the Petition for Redress was protected by the First Amendment's accountability clause as well as the free speech clause, WTP filed a motion to dismiss the complaint. The Government responded with a motion for a Summary Judgment. WTP opposed summary judgment on the ground that the Court would be in violation of due process interests if it were to grant summary judgment due to the large number of facts material to the case that were in genuine dispute, requiring an evidentiary hearing.

**The People's baneful injuries at the hand of the courts multiplies further.** The District Court awarded the Government a summary judgment -- i.e., it passed judgment without any public hearing or a trial, and without considering the evidence in the light most favorable to the People, as required by Due Process of law.

WTP appealed to the Second Circuit, honing its constitutional argument and requesting a reversal. WTP's appellate brief, the Government's response and WTP's reply are posted on the front page of our websites.

**However, the People's unjust injuries at the hands of the courts increased in the extreme.** On February 4, 2008, WTP appeared before a panel of three Appellate judges for "oral argument." On February 22, 2008, the United States Court of Appeals for the Second Circuit issued its terse decision,[4] affirming the District Court's decision "for substantially the same reasons."

On April 7, 2008, WTP filed a Petition for an En Banc Rehearing. **This is a must read (short) legal document, for it demonstrates just how far the courts are willing to go to shield the Government from the accountability clause of the First Amendment.** (links just below)

Among the charges leveled against the Court of Appeals in the Rehearing petition is that the initial judicial Panel violated several judicial canons of conduct when it orally berated appellant Schulz in public by subjecting him to a lengthy personal inquisition, demonstrating deep bias and prejudice against him. The Panel also sought (and succeeded) in publicly goading the largely unprepared U.S. Attorney into a commitment to have DOJ/IRS pursue criminal charges against Schulz. Beyond even this outrage, the WTP Defendants were denied Due Process on several other grounds by the Panel,

---

[2] http://www.wethepeoplefoundation.org/MISC/V-WashingtonPost-Mar-31-07.PDF

[3] http://www.youtube.com/watch?v=KL38VZfw7xg&feature=related

[4] http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/6700-USCOA-Feb-08.PDF

not the least of which was the Court's refusal to allow any discussion of any of the potent Constitutional questions raised by WTP on appeal.

Read the **Petition for En Banc Rehearing** (.pdf)
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/6700-PetitionEnBanc.pdf

Read the **transcript of the Feb. 2008 oral arguments** before the 2nd Circuit Court of Appeals. (.pdf)
http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/6700-Transcript-Feb-4-08.pdf

**To those who may have had any remaining doubt, it is now clear: The courts have evolved into the political weapon of choice for quashing the dissident voices of those fighting the Government's growing attacks upon the Constitution.**

In the words of one reviewer, WTP's Petition for an En Banc hearing, "is temperate yet forceful and thoroughly argued." If you read it you will have a clear understanding of the problem with the courts.

Endemic Constitutional abuse has left our Republic in a fragile state. Deprived of Justice, deprived of Redress and deprived of any established political instrument to secure such, the People are being slowly forced to seek out alternative means of resistance.

This Foundation believes the People possess the means to secure Constitutional Order by employing peaceful methods of protest to awaken a sleeping nation.

We The People will soon release additional details of its vision and plan to restore the Republic and secure Liberty. We pray you will join our cause for we know that while we must remain pro-active and non-violent, we can only achieve the reform we are entitled to if we, the People, achieve a mass-movement going forward.

(MY COMMENTARY)

# WARNING

The U.S. Supreme Court affirming that the American People have "*No First Amendment right to petition federal agencies for redress of grievances*" combined with "*no right to police protection*" and the federal courts bias against constitutional tort cases against the U.S. Government places the burden of remedy back upon the People in matters of constitutional rights violations by the U.S. Government.

When a remedy to constitutional rights & human rights violations is denied by all three branches of the U.S. Government then Citizen's Arrest becomes the remedy of last resort. When the right of Citizen's Arrest is obstructed then the civil disobedient, rebellion, revolt, and ultimately, revolution in escalating degrees of severity become the ultimate remedy.

At contest here is the U.S. Supreme Court's doctrine that "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." *See Smith v. Ark. State Highway Employees, Local 1315,* 441 U.S. 463, 465 (1979).

# DISSENTING OPINION

"*In a number of cases dissenting opinions have in time become the law*"    Charles Evans Hughes, The Supreme Court of the United States, Chapter 1: The Court at Work – Organization – Methods. p. 68; A Columbia Paperback. Columbia University Press. 1966. ISBN 0231085672

In Justice Marshall's dissenting opinion, MONTANA v. HALL, 481 U.S. 400, 406-410 (1987) he writes:

For years, I have been troubled by our disposition of appeals and petitions for certiorari through summary per curiam opinions, without plenary briefing on the merits of the issues decided.[1] Other Justices have registered similar objections, disputing the Court's application of the criteria that

---

[1] See, e. g., Allen v. Hardy, 478 U.S. 255, 261 (1986) (MARSHALL, J., dissenting); Maggio v. Fulford, 462 U.S. 111, 120 (1983) (MARSHALL, J., dissenting); Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 62 (1982) (MARSHALL, J., dissenting); Wyrick v. Fields, 459 U.S. 42, 50 (1982) (MARSHALL, J., dissenting); Harris v. Rivera, 454 U.S. 339, 349 (1981) (MARSHALL, J., dissenting); Schweiker v. Hansen, 450 U.S. 785, 791 (1981) (MARSHALL, J., dissenting); Harris v. Rosario, 446 U.S. 651, 652 (1980) (MARSHALL, J., dissenting); Smith v. Arkansas State Highway Employees, 441 U.S. 463, 466 (1979) (MARSHALL, J., dissenting).

supposedly determine when a summary disposition is clearly justified.[2] Our persistent indulgence in this practice over the objections of our colleagues has tarnished what has long been considered one of this judicial institution's greatest qualities, the fairness and integrity of its decisionmaking process.

Through summary dispositions, we deprive the litigants of a fair opportunity to be heard on the merits. Our Rules tell the petitioner and respondent that we will grant review on [481 U.S. 400, 406] writ of certiorari "when there are special and important reasons therefor."[3] In listing the considerations that are important in deciding whether review should be granted, we mention such things as conflicting decisions from other courts and unsettled questions of federal law. We do not indicate that the parties should address the merits of the lower court's decision beyond what is necessary to demonstrate whether the case is important enough to receive plenary review.[4] Our 30-page limit for petitions and responses, and the command that they be "as short as possible,"[5] unmistakably indicate that these papers should not contain detailed discussions of the merits. If we find the case sufficiently important, the Rules inform the parties that the petition will be granted and "[t]he case then will stand for briefing and oral argument."[6] Yet when we issue a summary disposition we ignore these instructions and proceed to decide the case as if it has been fully briefed on the merits. In my view, simply put, this is not fair.[7]

---

[2] See, e. g., Board of Education of Rogers, Ark. v. McCluskey, 458 U.S. 966, 971 -972 (1982) (STEVENS, J., dissenting); United States v. Hollywood Motor Car Co., 458 U.S. 263, 271 (1982) (BLACKMUN, J., dissenting); Hutto v. Davis, 454 U.S. 370, 387 (1982) (BRENNAN, J., dissenting); Stone v. Graham, 449 U.S. 39, 47 (1980) (REHQUIST, J., dissenting); Oregon State Penitentiary v. Hammer, 434 U.S. 945, 947 (1977) (STEVENS, J., dissenting); Eaton v. Tulsa, 415 U.S. 697, 707 (1974) (REHNQUIST, J., dissenting); cf. Shipley v. California, 395 U.S. 818, 821 (1969) (WHITE, J., dissenting).

[3] This Court's Rule 17.1.

[4] At our direction the respondent focuses instead on "disclosing any matter or ground why the cause should not be reviewed." Rule 22.1.

[5] Rules 21.4 and 22.2. In this case, petitioner devoted 12 pages to the merits of the double jeopardy issue decided by the Court today, respondent only 7. Pet. for Cert. 10-21; Respondent's Brief in Opposition 8-14. An amicus curiae brief submitted on behalf of 17 States devoted a total of five pages to the merits. Brief for the States and Commonwealths of Indiana et al. as Amici Curiae 2-6.

[6] Rule 23.2.

[7] This lack of fairness has not escaped the notice of commentators. See, e. g., E. Brown, The Supreme Court 1957 Term - Forward: Process of Law, 72 Harv. L. Rev. 77, 80, 82, (1958); R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice 284-285 (6th ed. 1986).

Admittedly, the Rules indicate that summary dispositions on the merits are possible,[8] but in light of our instructions regarding the preparation of petitions and responses this places the litigants in a difficult dilemma. If they venture [481 U.S. 400, 407] beyond arguments for granting or denying certiorari, they risk violating the Rules; but if they fail to cover the merits of the lower court's decision in full, they risk summary disposition without having been heard.[9] In response to these pressures, counsel may tend to extend their arguments in petitions and responses beyond the purposes defined in the Rules. Apart from increasing the litigants' costs, this tendency can only increase our workload, thereby giving those who favor uncounseled summary dispositions additional justification for not allowing full briefing on the merits.[10]

Not only do we reach these summary dispositions without the benefit of thorough briefing, but the Court often acts without obtaining the complete record of the proceedings below. Records are no longer automatically certified and delivered to us for every petition.[11] In fact, we expressly discourage transmission of the record at this stage of the proceedings,[12] which again indicates that the focus of certiorari is on whether a case is important enough to warrant plenary review and not whether, after abbreviated review, we are able to conclude that the case was rightly or wrongly decided below. Of course, we may call for the record where we think a summary disposition might be proper, and our Clerk notifies the parties of this development, but we do not provide for supplemental briefing on the merits.[13] All too often, as in the case decided today, the Court does not even bother to call [481 U.S. 400, 408] for the record. Again, counsel face a dilemma: they may routinely request that records be transmitted, thus protecting the interests of their clients at the risk of violating the Rules, or they may fail to request transmission and risk summary disposition based on less than complete review.

---

[8] Rule 23.1. This Rule was not codified until 1980. Stern, Gressman, & Shapiro, Supreme Court Practice, supra, at 277.

[9] Cf. United States v. Hollywood Motor Car Co., supra, at 271 (BLACKMUN, J., dissenting).

[10] See Hutto v. Davis, supra, at 387, n. 6 (BRENNAN, J., dissenting); Stern, Gressman, & Shapiro, Supreme Court Practice, supra, at 286.

[11] See generally Stern, Gressman, & Shapiro, Supreme Court Practice, supra, at 329-333.

[12] Rule 19.1.

[13] A party may, at any time, file a supplemental brief not exceeding 10 pages, but these briefs can only address a "new matter" not available at the time of the party's last filing. Rule 22.6. This Rule does not envision supplemental briefing when the Court calls for the record. See also Rule 21.3 (supplemental brief in support of petition will not be received).

I cannot accept the proposition that additional briefing and review of the full record will increase the workload of this Court unbearably. Our duty to litigants today is to consider carefully every petition and response filed in this Court. But our duty extends to future litigants as well, and it is heightened when we issue written opinions. To reduce the incidence of mistakes and to avoid delivering conflicting or confusing opinions, our decisions in these cases should be made only after we have had an opportunity to consider comprehensive briefs and review the records in their entirety. We are not infallible, as is evidenced, for example, by the number of cases each Term that are dismissed after plenary briefing and oral argument as having been improvidently granted. The time and effort required to read supplemental briefs in cases for which we are considering summary dispositions would be minimal,[14] and the relative gains substantial.

More is at stake, however, than offsetting the litigants' entitlement to be heard on the merits against our desires to avoid increasing the workload. Summary dispositions often do not accord proper respect for the judgments of the lower [481 U.S. 400, 409]  courts, particularly when these judgments are reversed.[15] The judges below have had the benefit of full briefing on the merits and review of the entire record. They must perceive - correctly - that our cavalier reversals are inherently less well informed.

I believe, moreover, that summary dispositions in many instances display insufficient respect for the views of dissenting colleagues on this Court. The tendency is to forget that we are equally uninformed. What troubles a single Justice about a particular case may become, after full briefing, a decisive factor in the judgment of the Court. As it is, we forge ahead issuing per curiam opinions as if the issue were crystal clear, at times over objection from as many as four other Justices.[16]  It is not unreasonable to believe, as I do, that the integrity of a summary decision from a divided Court would benefit from additional briefing on the merits by those who have litigated the issues of the case from its inception.

---

[14] To put matters in perspective, were we to shorten the acceptable length of petitions and responses merely by one-fifth of a single page, it would free up at least 2,000 pages worth of our reading time to consider full briefs for the relatively few summary dispositions we issue each year. That comes to 40 briefs, at 50 pages each, or 20 cases decided in which the parties and the Court would have the benefit of full briefing. This assumes that 5,000 petitions are filed each year, and that on the average litigants use the complete 30 pages allowed. The former assumption is conservative and is a matter of record; based on my personal observation the latter assumption is more than fair.

[15] See, e. g., Stone v. Graham, 449 U.S., at 47 (REHNQUIST, J., dissenting); Oregon State Penitentiary v. Hammer, 434 U.S., at 947 (STEVENS, J., dissenting).

[16] See, e. g., Newport v. Iacobucci, 479 U.S. 92 (1986).

"Per curiam" is a Latin phrase meaning "[b]y the court,"[17] which should distinguish an opinion of the whole Court from an opinion written by any one Justice. Our use of a lengthy per curiam opinion, over the dissent of those who would set the case for briefing, to resolve the merits of a case without devoting the usual time or consideration to the issues presented, is wrong. Such an opinion does not speak for the entire Court on a matter so clear that the Court can and should speak with one voice. Instead, it speaks for a majority of Justices who take it upon themselves to resolve the merits of a dispute solely on the basis of preliminary petitions and responses.

I can think of no compelling reason, and to date none has been suggested, why we should nurture a practice that can [481 U.S. 400, 410] only foster resentment, uncertainty, and error. Rather, I believe that when the Court contemplates a summary disposition it should, at the very least, invite the parties to file supplemental briefs on the merits, at their option. This simple accommodation to the reasonable expectations of the litigants, to the integrity of the lower courts, and to the desires of other Justices for a more studied decision would go a long way toward achieving the fairness and accuracy that the Nation rightfully expects from its Court of last resort. Until this, or some other, reasonable accommodation is implemented, I remain in dissent.

---

[17] Black's Law Dictionary 1023 (5th ed. 1979) (emphasis added).

## We the People Foundation, et al

v.

## United States, et al,

U.S. District Court for the District of Columbia, No. 04-1211 (August 31, 2005)

The Supreme Court, however, has held that "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." *See Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979). Plaintiffs' claims that the defendants are obligated to "properly" respond to plaintiffs' petitions shall thus be dismissed for failure to state a claim upon which relief may be granted.

## We the People Foundation, et al

v.

## United States, et al,

THE APPEAL: DC Circuit, No. 05-5359 (May 8, 2007)

IV

Plaintiffs cite the work of several commentators who suggest that *Smith* and *Knight* overlooked important historical information regarding the right to petition. Those commentators point to the government practice of considering petitions in some quasi-formal fashion from the 13th century in England through American colonial times – a practice that continued in the early years of the American Republic. Based on this historical practice, plaintiffs and these commentators contend that the Petition Clause should be interpreted to incorporate a right to a response to or official consideration of petitions. *See, e.g.*, Stephen A. Higginson, *A Short History of the Right to Petition Government for the Redress of Grievances*, 96 YALE L.J. 142, 155 (1986); James E. Pfander, *Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government*, 91 NW. U. L. REV. 899, 904-05 & n.22 (1997); Julie M. Spanbauer, *The First Amendment Right to Petition Government for a Redress of Grievances: Cut From a Different Cloth*, 21 HASTINGS CONST. L.Q. 15, 17-18 (1993); Note, *A Petition Clause Analysis of Suits Against the Government: Implications for Rule 11 Sanctions*, 106 HARV. L. REV. 1111, 1116-18 (1993); *cf.* David C. Frederick, *John Quincy Adams, Slavery, and the Disappearance of the Right of Petition*, 9 LAW & HIST REV. 113, 116-18, 141 (1991).

Other scholars disagree, arguing based on the plain text of the First Amendment that the "right to petition the government for a redress of grievances really is just a right to petition the government for a redress of grievances." Gary Lawson & Guy Seidman, *Downsizing the Right to Petition*, 93 NW. U. L. REV. 739, 766 (1999); *cf.* Norman B. Smith, *"Shall Make No Law Abridging . . .": An Analysis of the Neglected, but Nearly Absolute, Right of Petition*, 54 U. CIN. L. REV. 1153, 1190-91 (1986). These scholars note that the Petition Clause by its terms refers only to a right "to petition"; it does not also refer to a right to response or official consideration. *See* N. BAILEY, AN UNIVERSAL ETYMOLOGICAL ENGLISH

DICTIONARY (24th ed. 1782) ("To petition": "to present or put up a Petition"); S. JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (6th ed. 1785) ("To petition": "To solicite; to supplicate"). As they suggest, moreover, the Framers and Ratifiers did not intend to incorporate every historical practice of British or colonial governments into the text of the Constitution. *See* Lawson & Seidman, 93 NW. U. L. REV. at 756-57; *cf. Williams v. Florida*, 399 U.S. 78, 92-93 (1970); *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 274-76 (1989) ("Despite this recognition of civil exemplary damages as punitive in nature, the Eighth Amendment did not expressly include it within its scope.").

We need not resolve this debate, however, because we must follow the binding Supreme Court precedent. *See Tenet v. Doe*, 544 U.S. 1, 10-11 (2005). And under that precedent, Executive and Legislative responses to and consideration of petitions are entrusted to the discretion of those Branches.

The judgment of the District Court is affirmed.

# We the People Foundation, et al

## v.

# United States, et al,

## U.S. Supreme Court, No. 07-681

http://www.wethepeoplefoundation.org/PROJECTS/Court-Docs/SCOTUS-DENIES-Docket-07-681.htm

# Petition for Writ of Certiorari – DENIED January 7, 2008

## Petition for Rehearing FILED January 31, 2008

## Petition for Rehearing DENIED February 25, 2008

http://www.supremecourtus.gov/docket/07-681.htm